IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TOMMY McADAMS                                                           PLAINTIFF

v.                                              CIVIL ACTION NO. 1:21-cv-3-TBM-RPM

PAULA LADNER                                                          DEFENDANT

<u>**MEMORANDUM OPINION AND ORDER**</u>

Tommy McAdams and Paula Ladner were employed by the Harrison County Tax Assessor's Office. Upon retirement of the former Tax Assessor, Tal Flurry, both McAdams and Ladner decided to run for Tax Assessor. Ladner won the election and terminated McAdams' employment. According to McAdams, Ladner terminated him because he ran against her for Tax Assessor. McAdams explains that before he announced his candidacy for Tax Assessor, he and Ladner had a conversation about them running for the same office. It was during that conversation Ladner allegedly told McAdams, "if you run against me and I have to spend a lot of money to beat you and I win, I will seriously consider terminating you." McAdams claims that he understood this statement to mean that if he did not cost her a lot of money by running against her for Tax Assessor, then she would not terminate him.

Ladner filed a Motion for Summary Judgment [43], arguing that McAdams was not terminated because he ran against Ladner for Tax Assessor, but rather due to his poor work performance. In the alternative, Ladner argues that even if McAdams was terminated because he ran against her for Tax Assessor, McAdams falls into the class of employees subject to political patronage dismissals.

Although McAdams could be subject to political patronage dismissals, the Court finds that a reasonable jury could believe that McAdams was terminated because he ran against her for Tax Assessor. To be sure, a reasonable jury could also find in favor of Ladner. But this is precisely the type of case for a jury to decide. Accordingly, for the reasons discussed fully below, the Court finds that the Motion for Summary Judgment [43] should be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Tommy McAdams and Paula Ladner worked together for many years at the Harrison County Tax Assessor's Office. McAdams was initially hired as a Field Appraiser and was promoted in 2007 to the position of Real Property Field Director. During this time, Ladner served as Chief Operating Officer to the then Tax Assessor, Tal Flurry.[1] As the Chief Operating Officer, Ladner was one of McAdams' supervisors.[2] As McAdams' supervisor, Ladner submits that she was not satisfied with his job performance and even recommended to Tal Flurry that McAdams be terminated.

In 2018, Tal Flurry announced that he would not be seeking reelection as Tax Assessor of Harrison County. Following Tal Flurry's announcement, Ladner expressed her intention to seek election as the new Tax Assessor of Harrison County. Although Ladner was endorsed by the two previous Tax Assessors, McAdams also decided to run for Tax Assessor. McAdams does not dispute that his decision to run was, in part, because he "knew that [he] and [Ladner] had not

---

[1] The parties do not dispute that regardless of their titles, both McAdams and Ladner were considered Deputy Tax Assessors pursuant to Mississippi Code Section 27-1-9.

[2] Robert Stinziano, the Chief Appraiser, was McAdams' other supervisor.

gotten along during [his] tenure and that if she was elected [he] might lose [his] job." [43-2], pg. 19.

In February 2019, prior to McAdams publicly announcing his candidacy, Ladner approached McAdams to discuss his intent to run for Tax Assessor. According to McAdams, Ladner said, "if you run against me and I have to spend a lot of money to beat you and I win, I will seriously consider terminating you." In November 2019, Ladner was elected Tax Assessor of Harrison County and officially took office on January 6, 2020. On January 3, 2020, prior to assuming her role as Tax Assessor, however, Ladner handed McAdams a termination letter. The letter informed McAdams that his termination would be effective January 6, 2020, due to restructuring within the office. According to Ladner, because of McAdams' performance issues, she determined that his job could be done by field appraisers and therefore dissolved the position as it was unnecessary to the functioning of the office. [43-3], pp. 17-18. Notwithstanding the reasoning provided in his termination letter, McAdams asserts that he was terminated because he ran against Ladner for Tax Assessor.

McAdams filed suit in this Court on January 4, 2021, under 42 U.S.C. § 1983 against Ladner in her individual capacity. [3] In his Complaint [1], McAdams alleges political retaliation in violation of his First Amendment rights.[4]

---

[3] McAdams also sued Elmer Talmage Flurry ("Tal Flurry"), who was dismissed with prejudice via Stipulation [41] on December 16, 2021. McAdams also states that he "has made no claims against Paula Ladner, in her official capacity of Tax Assessor of Harrison" County. [44], pg. 1.

[4] In his Response [49] to Ladner's Motion for Summary Judgment, McAdams concedes to the dismissal of his tortious interference claim and it is therefore dismissed with prejudice. [49], pg. 6.

## II. STANDARD OF REVIEW

"Summary judgment should be used 'most sparingly in . . . First Amendment case[s] . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities.'" *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (quoting *Porter v. Califano*, 592 F.2d 770, 778 (5th Cir. 1979)). But even in First Amendment cases, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citation omitted). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc. v. Sandy Creek Energy Assocs.,*

*L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).

### III. DISCUSSION AND ANALYSIS

McAdams alleges that he was terminated in retaliation for exercising his First Amendment right to political free speech—specifically for running against Ladner for Tax Assessor of Harrison County. Ladner argues that she is entitled to summary judgment on McAdams' claim for two reasons. First, Ladner argues that McAdams was not terminated because he ran against her for Tax Assessor, but rather due to his poor work performance. Second, Ladner argues that even if McAdams was terminated because he ran against her for Tax Assessor, which Ladner denies, McAdams falls into the class of employees subject to political patronage dismissals.

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). In *De La Garza v. Brumby*, then District Judge Gregg Costa explained that the Supreme Court has addressed the First Amendment rights of public employees in two related lines of cases, one involving free speech on matters of public concern and the other involving political patronage. *De La Garza v. Brumby*, No. 6:11-cv-37-GC, 2013 WL 754260, at *2 (S.D. Tex. Feb. 27, 2013) (citations omitted). Public concern cases are those in which a public employee is penalized for speech which touches on a matter of public concern, while political patronage cases are those in which a public employee is discharged for political activity or

party affiliation. *Brinston v. Dunn*, 928 F. Supp. 669, 671 (S.D. Miss. 1996). Both implicate the First Amendment rights of public employees.

While this is a political patronage case rather than a public speech case, the Fifth Circuit analyzes cases in which the public employee engages in campaign activity as "public concern" speech cases subject to the *Pickering* balancing test. *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020); *De La Garza*, 2013 WL 754260 at *2; *Brinston*, 928 F. Supp. at 671; *McBee v. Jim Hogg County*, 730 F.2d 1009 (5th Cir. 1984). In *Pickering*, the Supreme Court held that the First Amendment precludes the discharge of public employees for exercising their First Amendment right to free speech if two criteria are satisfied: (1) the speech relates to a matter of public concern; and (2) the employee's interest in commenting upon matters of public concern outweighs the employer's interest in promoting the efficiency of the public services it performs through its employees. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)).

To establish a First Amendment retaliation claim under Section 1983, a plaintiff must show (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in the speech outweighed the [employer's] interest in promoting efficiency; and (4) his speech motivated the adverse employment action. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). Courts analyze First Amendment retaliation claims under the "mixed-motives" framework—set forth in *Mt. Healthy City School District Board of Education v. Doyle*—rather than the *McDonnell Douglas* pretext analysis used in Title VII cases. *Gonzalez v. Dallas County*, 249 F.3d 406, 412 n. 6 (5th Cir. 2001); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). Under *Mt. Healthy*, if the plaintiff sets forth a *prima facie* retaliation case, the defendant-employer "may avoid liability by showing a

legitimate reason" for which it would have made the employment decision "even in the absence of [the plaintiff's] protected conduct . . . Finally, the plaintiff may rebut by showing the employer's proffered reason is pretextual." *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 332 (5th Cir. 2021) (citations omitted); *see also Beattie v. Madison Co. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir.2001), applying *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).

Here, it is undisputed that McAdams suffered an adverse employment action. It is also undisputed that McAdams' speech relates to a matter of public concern, as the Fifth Circuit has held that "[p]olitical speech regarding a public election lies at the core of matters of public concern protected by the First Amendment." *Wiggins v. Lowndes County, Miss.*, 363 F.3d 387, 390 (5th Cir. 2004); *Jordan v. Ector County*, 516 F.3d 290, 297 (5th Cir. 2008) (collecting cases). Accordingly, the first question before the Court is whether McAdams' interest in running for Tax Assessor of Harrison County outweighs Ladner's interest in promoting efficiency within the Tax Assessor's Office. To answer this question, the Court must determine whether McAdams' position as a Deputy Tax Assessor is subject to patronage dismissal—if so, Ladner's interests as McAdams' employer more easily outweigh McAdams' interests. The Court must then consider whether a reasonable juror could find that McAdams' termination was motivated by his speech.

## A. The patronage dismissal exception and the *Pickering* balancing test

In balancing McAdams' interest in campaigning for public office against Ladner's interest in promoting the efficiency of the public services the Tax Assessor's Office performs through its employees, the Court must determine whether McAdams is subject to the patronage dismissal exception to the First Amendment's protection. If the Court finds that McAdams' "private

political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to [Ladner's] vital interest in maintaining governmental effectiveness and efficiency." *Branti v. Finkel*, 445 U.S. 507, 517, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980)).

It is well settled that the "termination of employees for political reasons," otherwise known as patronage dismissal, is "presumptively violative of the First Amendment." *Correa v. Fischer*, 982 F.2d 931, 933 (5th Cir. 1993). At the same time, an employer has a "legitimate interest in maintaining proper discipline in the public service, to the end that its duties may be discharged with efficiency and integrity." *McBee*, 730 F.2d at 1013 (citing *Connick*, 461 U.S. at 150). "Thus, if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the [employer's] vital interest in maintaining governmental effectiveness and efficiency." *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995) (quoting *Branti*, 445 U.S. at 517)). Indeed, a private citizen's right to freedom of speech, even political speech, "is not absolute, insofar as it conflicts with his role as a public employee." *Id.* at 886.

In political patronage cases, the Fifth Circuit applies the *Elrod-Branti* doctrine, which "forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64, 110 S. Ct. 2729 (1990) (citing *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673 (1976); *Branti*, 445 U.S. at 100; *Jordan v. Ector County*, 516 F.3d 290, 296 (5th Cir. 2008). "Although the Supreme Court's decisions involve party affiliation, our Circuit has recognized that 'the *Elrod-Branti* doctrine applies when an employment decision is based upon support of and loyalty to a particular candidate

as distinguished from a political party.'" *Jordan v. Ector County*, 516 F.3d 290, 295-96 (5th Cir. 2008) (quoting *Correa v. Fischer*, 982 F.2d 931, 935 (5th Cir. 1993)). "In these cases, the employees' political support of the defendant's political rival raised the concern that the employees' termination was based on the employees' political loyalties." *Correa v. Fischer*, 982 F.2d 931, 935 (5th Cir. 1993). In such cases, political alignment alone may trigger First Amendment protection. *See Rutan*, 497 U.S. at 72; *Branti*, 445 U.S. at 517; *Elrod*, 427 U.S. at 349-50; *Steadman v. Texas Rangers*, 179 F.3d 360, 367 (5th Cir. 1999); *Gomez v. City of Eagle Pass*, 91 F. Supp. 2d 1000, 1013-1014 (W.D. Tex. 2000).

"The patronage dismissal exception as described in *Elrod-Branti* applies generally to public employees who are either in policy making positions or in positions which require access to confidential materials or documents." *Garza v. Escobar*, 386 F. Supp. 794, 807 (S.D. Tex. Apr. 30, 2019) (citing *Wiggins*, 363 F.3d at 390). Indeed, where non-policymaking, non-confidential employees are discharged solely because of their private political views, "little, if any, weighing of an employee's First Amendment rights against an employer's right to loyal and efficient service is necessary, and the employee's rights will usually prevail." *Gentry v. Lowndes County, Miss.*, 337 F.3d 481 (5th Cir. 2003). But in cases involving public employees who hold policymaker or confidential positions, "the government's interests more easily outweigh the employee's (as a private citizen)." *Brady v. Ft. Bend Cnty.*, 145 F.3d 691, 707-08 (5th Cir. 1998) (internal quotation and citation omitted). In other words, a public employee's status as a policymaker or a confidential employee "is a factor that weighs heavily in favor of a finding that the discharge of the employee does not violate the First Amendment." *Briston*, 928 F. Supp. at 672. Although a finding that a plaintiff was a policymaker or confidential employee is no longer the end of the inquiry following

the Supreme Court's decision in *Branti*, "courts continue to recognize that employees in these roles receive less First Amendment protection than those not in such positions." *Foster*, 2017 WL 2978001 at *2.

### i. Whether McAdams was a Policymaker or a Confidential Employee

Pursuant to political affiliation jurisprudence, policymakers are "public employees whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." *Aucoin v. Haney*, 306 F.3d 268, 273 (5th Cir. 2002) (quoting *Stegmaier v. Trammell*, 597 F.2d 1027, 1035 (5th Cir. 1979)). Employees may be policymakers if they "control[] or exercise[] a role in a decision making process as to the goals and general operating procedures of (an) office." *Id.* (quoting *Stegmaier*, 597 F.2d at 1035). However, "[n]o clear line can be drawn between policymaking and non-policymaking positions . . . In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Elrod*, 427 U.S. at 367–68 (citation omitted).

A public employee may be "confidential" "if he or she stands in a confidential relationship to the policymaking process, e.g., as an advisor to a policymaker, or if he or she has access to confidential documents or other materials that embody policymaking deliberations and determinations, e.g., as a private secretary to a policymaker." *Maldonado v. Rodriquez*, 932 F.3d 388, 393 (5th Cir. 2019) (quoting *Wiggins v. Lowndes County, Miss.*, 363 F.3d 387, 391 (5th Cir. 2004)). In *Stegmaier v. Trammell*, the Fifth Circuit further clarified that a confidential employee

may also be one who is in a position to subject an elected official to personal liability. *Stegmaier v. Trammell*, 597 F.2d 1027, 1040 (5th Cir. 1979) (holding that a deputy clerk is confidential because, in the course of representing the Circuit Clerk, he may subject the Circuit Clerk to civil liability and fines).

In evaluating whether a position is policymaking or confidential, and therefore subject to the *Elrod-Branti* exception, courts consider the nature of the employee's responsibilities. *Elrod*, 427 U.S. at 367. "The inquiry is case specific, and courts have considered a number of duties when determining whether a position is one in which political loyalty is an inherent requirement." *Garza v. Escobar*, 386 F. Supp. 3d 794, 808 (5th Cir. 2019) (finding "[n]umerous federal courts have held that employees serving a government in 'representative,' 'spokesperson,' or 'liaison' capacities are exempt from First Amendment protection under *Branti* and its progeny.") (collecting cases). While the Fifth Circuit has not addressed whether a Deputy Tax Assessor is a policymaker or a confidential employee, the Fifth Circuit has "permitted dismissals of politically unreliable employees in a number of other positions following the applicable balancing test." *Gentry v. Lowndes County, Miss.*, 337 F.3d 481, 487 (5th Cir. 2003) (collecting cases).[5] Notably, in close cases, *Elrod* requires that "doubt should be resolved in favor of the public employee subject to patronage

---

[5] Indeed, the Fifth Circuit applied the patronage dismissal exception to various positions, including an assistant district attorney, deputy circuit clerk, personal secretary to the police chief, sheriff's law enforcement staff, Coordinator of the Crime Victims Unit, and a school superintendent. *See Stegmaier*, 597 F.2d at 1040 (finding deputy circuit clerk falls within exception as a "confidential employee"); *Soderstrum*, 925 F.2d at 141 (finding personal secretary to police chief found to be a confidential employee); *McBee*, 703 F.2d at 841 (finding a sheriff's law enforcement staff—comprised of six deputies and four dispatchers—were subject to patronage dismissal); *Garza*, 972 F.3d at 730 (finding CVU coordinator to be a policymaker and confidential employee, as the position is a "creature of Texas law"); *Kinsey*, 950 F.2d at 995 (finding school superintendent found to be within exception), cert. denied, 504 U.S. 941, 112 S. Ct. 2275, 119 L. Ed. 2d 201 (1992). Alternatively, the Fifth Circuit has found that a county road foreman who "implemented projects determined by superiors; assigned work to the road crew and supervised work in the field; inspected equipment; maintained records; inspected roads and bridges; and performed other assigned duties" and who had "no access to confidential documents" was not a policymaker or a confidential employee. *Wiggins*, 363 F.3d at 392.

dismissal." *Stegmaier v. Trammell*, 597 F.2d 1027, 1035 (5th Cir. 1979) (citing *Elrod*, 427 U.S. at 368).

Here, the record contains little evidence regarding McAdams' role or job responsibilities as the Real Property Field Director for the Harrison County Tax Assessor's Office. In fact, the only information pertaining to his role or job responsibilities is as follows: McAdams was responsible for (1) ensuring that the 100,000 parcels of land in Harrison County were appraised correctly, (2) supervising and training Field Appraisers, and (3) utilizing computer design programs. [43-2], pp. 13, 14. In his Affidavit, McAdams attests that he could not hire, fire, or issue reprimands; that he could not set schedules or pay rates; that he did not have discretion to determine where a Field Appraiser would be working; and that he was not included in discussions regarding policies. [48-1], pg. 3. Due to these limitations, McAdams submits that he was not a policymaker. Contrary to McAdams' assertions, Ladner claims that McAdams was a policymaker because he was one of three supervisors in the Tax Assessor's Office and because he supervised six or seven other subordinate employees who went into people's homes and businesses to conduct assessments. Ladner further argues that as a supervisor, McAdams' position was "hands on" with the public as property owners emailed him directly regarding tax assessment issues.

Given the limited information within the record, and because McAdams' position as a Deputy Tax Assessor is addressed by Mississippi law, the Court also turns to the Mississippi Code to identify relevant responsibilities. A tax assessor in Mississippi is charged with the collecting and handling of significant amounts of taxpayer money and with the assessment and valuation of property within the county. MISS. CODE ANN. §§ 27-1-7, -19, -23. A tax assessor may appoint deputies "to assist him in carrying out the duties of his office," with each deputy tax assessor to

give a bond of not less than $50,000.00. MISS. CODE ANN. § 27-1-9. The Mississippi Code grants tax assessor as well as their deputies the power to, inter alia, "inspect[] books and accounts, papers, memoranda, and records" and to "make an estimate of the value of all property to be assessed." MISS. CODE ANN. § 27-1-23. In addition to handling large sums of taxpayer funds, the tax assessor and her deputies have the authority to investigate, inquire, and employ their own judgment to assess the true value of the electorate's property. MISS. CODE ANN. §§ 27-1-7, -19, -23. According to the Mississippi Code, Deputy Tax Assessors may perform all of the elected Tax Assessor's statutorily prescribed duties. MISS. CODE ANN. § 27-1-23.

While the Fifth Circuit has not specifically addressed whether a Deputy Tax Assessor is considered a policymaker or a confidential employee, the Fifth Circuit has found that a deputy circuit clerk is subject to the patronage dismissal exception as a confidential employee. In *Stegmaier v. Trammell*, the Fifth Circuit explained that a circuit clerk is elected by the public, and under Alabama law, "a deputy clerk is empowered to conduct all business which the clerk is authorized to conduct . . ., and when, by statute, the clerk is subject to civil liability and fines for failure to perform his statutory duties," the circuit clerk must be able to select a deputy clerk "in whom he has total trust and confidence and from whom he can expect, without question, undivided loyalty." *Stegmaier*, 597 F.2d at 1040.

Like the circuit clerk position in *Stegmaier*, the Tax Assessor of Harrison County is an elected position in which the Tax Assessor may appoint Deputy Tax Assessors. As provided by the Mississippi Code, Deputy Tax Assessors are afforded the same amount of statutory authority as the elected Tax Assessor and are subject to fines if their duties are not faithfully discharged. In applying this Fifth Circuit precedent, and upon consideration of McAdams' duties and

13

responsibilities found within the record and the Mississippi Code, this Court finds that McAdams was a confidential employee. *See Foster v. Smith*, No. 3:16-cv-91-NBB, 2017 WL 2978001, at *6 (N.D. Miss. Jul. 11, 2017) (finding a deputy tax assessor is considered a confidential employee); *see also Brinston*, 928 F. Supp. at 673 (finding that the defendant could have reasonably concluded that the deputy circuit clerk was a confidential employee "from whom she could demand political loyalty under applicable Fifth Circuit precedent."); *Garza v. Escobar*, 972 F.3d 721 (5th Cir. 2020); *Maldonado v. Rodriguez*, 322 F. Supp 3d 753 (S.D. Tex. 2017).

Although the main premise of Ladner's argument is that McAdams is a policymaker, she also argues that McAdams falls under the confidential employee umbrella. Because courts in our Circuit consider the two together—and often decline to determine whether an employee was a policymaker upon finding that an employee was a confidential employee—this Court does the same and finds that because McAdams was a confidential employee, the Court need not determine whether he was also a policymaker. *Soderstrum v. Town of Grand Isle*, 925 F.2d 135, 141 (5th Cir. 1991) (finding that the plaintiff was a confidential employee and declining to address whether plaintiff was also a policymaker); *Foster v. Smith*, 2017 WL 2978001 at * 6 (finding that the plaintiff was a confidential employee and finding it unnecessary to determine whether the plaintiff was a policymaker); *Wiggins*, 363 F.3d at 392 (addressing together whether the employee was a policymaker or in a confidential role and finding that he was neither).

Having found that McAdams was a confidential employee, his "First Amendment rights are more easily outweighed in balancing interests." *Kinsey v. Salado Independent School District*, 950 F.2d 988 (5th Cir. 1992). Accordingly, the Court finds that this factor weighs more in favor of

Ladner's "interest in maintaining governmental effectiveness and efficiency." *Branti*, 445 U.S. at 517.

### ii. *Pickering* balancing test

Concluding that McAdams is a confidential employee, however, does not completely answer whether he can properly be subject to patronage dismissal. *See Vojvodich v. Lopez*, 48 F.3d 879, 884 (5th Cir. 1995). Indeed "the key factor in the balancing test is whether political allegiance 'is an appropriate requirement for the effective performance of the public office involved.'" *Wiggins*, 363 F.3d at 390 (citing *Branti*, 445 U.S. 507). The Fifth Circuit makes this determination by applying "a case-by-case balancing test to determine whether an employee's interest in commenting upon matters of public concern outweighs the interest of the [employer] in promoting the efficient delivery of public services." *Wiggins v. Lowndes Cty.*, 363 F.3d 387, 390 (5th Cir. 2004) (citing *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991)); s*ee also Maldonado*, 932 F.3d at 392 ("The balancing test is case-specific.").

In *McBee v. Jim Hogg County*, the Fifth Circuit "set forth the framework under which the First Amendment rights of public employees in free speech and political patronage cases should be analyzed by specifically adopting the *Pickering* balancing test based on several factors set forth in *Connick*." *Brinston v. Dunn*, 928 F. Supp. 669, 671 (S.D. Miss. 1996) (citing *Connick v. Myers*, 461 U.S. 138, 147, 103 S. Ct. 1648, 1690, 75 L. Ed. 2d 708 (1983)); *see also Gentry v. Lowndes County, Miss.*, 337 F.3d 481, 485 (5th Cir. 2003) (citing *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 993-94 (5th Cir. 1992) (citing *McBee v. Jim Hogg County*, 730 F.2d 1009, 1014 (5th Cir. 1984)); *Jordan v. Ector County*, 516 F.3d 290, 296 (5th Cir. 2008).

In striking the "proper balance between the employee's speech and associational rights as a citizen and the [employer's] right . . . to loyal and efficient service," the Fifth Circuit has held that courts should consider (1) the degree to which the employee's activity involved a matter of public concern; (2) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (3) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (4) whether the activity impairs discipline by superiors or harmony among coworkers; and (5) the time, place, and manner of the employee's activity. *McBee*, 730 F.2d at 1014; *Brady v. Ft. Bend County*, 145 F.3d 691, 707 (5th Cir. 1998) (citations omitted). For "close working relationships" to be deemed "essential," the particular speech must "sufficiently disrupt[] the working relationship as to prevent effective performance." *McBee*, 730 F.2d at 1017.

The employer has the ultimate burden of proving that its interest outweighs the employee's interest. *Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991); *see also United States Department of Justice, I.N.S. Border Patrol, El Paso, Texas v. Federal Labor Relations Authority*, 955 F.2d 998, 1005 n. 7 (5th Cir. 1992). The burden, however, "varies depending upon the nature of the employee's expression. The more central a matter of public concern the speech at issue, the stronger the employer's showing of counterbalancing governmental interest must be." *Jordan v. Ector Cty.*, 516 F.3d 290, 299 (5th Cir. 2008) (internal footnote, quotation marks, and punctuation omitted). "This analysis in reality is a sliding scale or spectrum upon which 'public concern' is weighed against disruption." *Vojvodich*, 48 F.3d at 885; *see also Maldonado*, 932 F.3d at 392.

It is undisputed that McAdams' campaign for Tax Assessor "lies at the core of matters of public concern protected by the First Amendment." *Wiggins v. Lowndes County, Miss.*, 363 F.3d

16

387, 390 (5th Cir. 2004); *Jordan v. Ector County*, 516 F.3d 290, 297 (5th Cir. 2008) (collecting cases). The Fifth Circuit has repeatedly recognized that "a stronger showing of disruption may be necessary if the employee's speech more substantially involves matters of public concern." *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995) (collecting cases); *Click v. Copeland*, 970 F.2d 106, 112 (5th Cir. 1992).

Ladner has put forth no evidence that McAdams' political activity caused disruption within the office. In fact, Ladner emphatically argues that McAdams was *not* fired because of his political activity. [43-3], pg. 9; [44], pp. 9, 11, 14, 15; [51], pp. 8, 9, 10, 13. Instead, she argues that he was fired due to his poor work performance. Under the *Pickering* balancing test, however, it is the political speech or activity "that must give rise to the workplace disruption." *De La Garza v. Brumby*, No. 6:11-cv-37-GC, 2013 WL 754260, at *4 (S.D. Tex. Feb. 27, 2013). Based on Ladner's arguments, there is little basis for concluding that McAdams' political activity caused disruptions substantial enough to outweigh his First Amendment interests. *See Jordan*, 516 F.3d at 299.

Because Ladner does not put forth any evidence of disruption, as required by the *McBee* framework, the Court finds that she has not met her burden. Indeed, McAdams' speech—by way of campaigning for public office—substantially involves a matter of public concern. Despite his status as a confidential employee, the *McBee* factors weigh in favor of a conclusion that his interest in running against Ladner for Tax Assessor of Harrison County outweighs Ladner's interest in efficiency in the services that the Tax Assessor's office provides.

### B. Whether McAdams' speech motivated the adverse employment action

The fourth prong of a First Amendment retaliation claim requires a plaintiff to show that his protected First Amendment activity was a substantial or motivating factor for the adverse

employment decision. *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013) (citing *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001)). Accordingly, Ladner's argument that McAdams was terminated because of his alleged poor work performance is properly considered in evaluating whether McAdams can show that his First Amendment activity was a substantial or motivating factor in Ladner's decision to terminate him. Unlike the *Pickering* balancing test, which is an issue of law for the Court to decide, it is generally more appropriate for a jury to decide "fact-based causation" issues. *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992) (citing *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 193 (5th Cir. 1988) (finding summary judgment inappropriate because defendant's motive is a material issue of fact)).

While Ladner submits that there is no genuine issue of material fact to be decided by a jury, the Court is bound by the Fifth Circuit's general rule that causation in First Amendment retaliation cases is typically a jury question. *See Brady v. Fort Bend Cty.*, 145 F.3d 691, 712 (5th Cir. 1998). Although there are certainly exceptions to this rule, "[c]ourts deciding the causation issue by summary disposition have generally done so only when the employer's reasons have not been controverted." *Haverda v. Hays County*, 723 F.3d 586, 596 (5th Cir. 2013). Indeed, in *Gerhart v. Hayes*, the only causation evidence the plaintiff offered was the decisionmaker's mere knowledge of the speech. *Gerhart v. Hayes*, 217 F.3d 320, 322 (5th Cir. 2000) (noting the plaintiff "has offered no other evidence that would establish that the motive behind [the] decision to terminate her was to retaliate for her having spoken out on this issue"). In *Beattie v. Madison County School District*, the plaintiff could not show that the school board members who terminated her even had knowledge of her speech. *See Beattie*, 254 F.3d at 605; *see also James v. City of Houston*, 48 F. App'x 916, 2002 WL 31114951, at *4 (5th Cir. Sep. 12, 2002). And in *Pierce v. Texas Department of*

*Criminal Justice, Institutional Division*, the plaintiff failed to present any causation evidence and therefore did not allege facts that would allow a reasonable juror to conclude that the reasons presented for plaintiff's termination were pretextual. *Pierce v. Texas Dept. of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1151 (5th Cir. 1994).

Unlike the exceptions to the general rule, however, McAdams has provided direct evidence—at least in the light most favorable to the Plaintiff—of Ladner's alleged retaliatory motive. *See Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993) ("Direct evidence is evidence which, if believed, proves the fact without inference or presumption."). According to McAdams, Ladner said, "if you run against me and I have to spend a lot of money to beat you and I win, I will seriously consider terminating you." [43-2], pp. 29-30. McAdams further claims that "Ladner made it clear to [him] that he could keep his job if [he] saved her lots of money by not running against her." [49], pg. 5. Although McAdams does not dispute that his decision to run was, in part, because he "knew that [he] and [Ladner] had not gotten along during [his] tenure and that if she was elected [he] might lose [his] job," based on Ladner's statement, a reasonable juror could infer that McAdams' candidacy was a motivating factor in Ladner's decision to termination him.

At the summary judgment stage, the Court may not weigh the evidence, which must be viewed in the light most favorable to McAdams. [43-2], pg. 19. Having done so, a reasonable juror could believe that Ladner was going to terminate McAdams unless he did not run against Ladner. *See De La Garza*, 2013 WL 754260 at *5 (citing *Brady*, 145 F.3d at 713 (affirming jury verdict for plaintiff on causation element based in part on testimony recounting sheriff's comments that he did not rehire a deputy because he "was backing the wrong man" and "had bet on the wrong horse

19

and lost")); *Brown v. Leflore County, Mississippi*, 150 F. Supp. 3d 753, 769 (N.D. Miss. 2015) (denying summary judgment, in part, due to defendant's statement that plaintiff's speech factored into his decision to fire him).

"Because there are no Fifth Circuit cases authorizing a court to override direct evidence of retaliatory motive and grant summary judgment—and such a ruling would be contrary to the fundamental division of labor between judge and jury—a disputed fact issue exists on the causation element in this case." *De La Garza*, 2013 WL 754260 at *5 (finding summary judgment as to causation inappropriate due to testimony that defendant did not want to hire plaintiff because "I like my job and don't want to give anyone a base of operations to run against me."). For these reasons, it is for a jury to decide whether McAdams' candidacy against Ladner for Tax Assessor of Harrison County was a motivating factor in his termination.

### C. *Mt. Healthy* Affirmative Defense

Although McAdams has set forth a *prima facie* case of First Amendment retaliation, Ladner may avoid liability by showing she would have terminated McAdams regardless of his campaign activity. The Fifth Circuit has found the *Mt. Healthy* defense established as a matter of law when a plaintiff had "no direct evidence [of] a retaliatory motive," "failed to present a chronology of events that would allow reasonable jurors to draw an inference of retaliation," or could not show retaliatory motive because the "protected speech did not adversely affect" the defendant in any conceivable manner. *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424–25 (5th Cir. 1997). Here, McAdams has presented both direct evidence of retaliation and evidence that his protected speech adversely affected Ladner by causing her to spend money campaigning against him. Because Ladner has not established the *Mt. Healthy* defense as a matter of law, the question, therefore, is

not whether McAdams *could* have been terminated for his pre-speech job performance, but whether he *would* have been terminated if he had not engaged in protected speech. *See Haverda v. Hays Cty.*, 723 F.3d 586, 597 (5th Cir.2013) (citing *Mt. Healthy*, 429 U.S. at 287).

Ladner asserts that McAdams was terminated for poor performance, which she claims is illustrated by the fact that field assessors were performing McAdams' job duties—thus indicating that his position was unnecessary for the successful operation of the office. After this action was filed, Ladner asserts that she became aware of McAdams' extensive personal internet usage while he was supposed to be working. Ladner argues that McAdams' internet history corroborates her observations that McAdams was not doing his job and explains his poor performance.

McAdams asserts that despite Ladner's claims that he was terminated for poor performance, another employee with much more severe performance issues kept his job. In fact, McAdams has offered evidence that another employee—his other supervisor—has an alleged long internet history of visits to inappropriate websites during work hours. [51], pg. 9; *see* [48-4]. This evidence, whether weak or strong, is nevertheless evidence that another employee engaged in conduct similar to McAdams without being terminated. Such evidence "is sufficient for a reasonable jury to conclude that [the employer] would not have taken the same action in the absence of the protected conduct." *Jordan*, 516 F.3d at 301. Finally, "[a] borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct." *Mt. Healthy*, 429 U.S. at 286.

McAdams has provided evidence of a single statement by Ladner from which a jury could conclude that Ladner would not have terminated McAdams if he had not been a political rival. But for this one statement, McAdams may not have a case. It is for a jury to decide the credibility of

this statement; the credibility of McAdams' and Ladner's testimony; as well as the reason behind McAdams' termination. After weighing the evidence and the credibility of both McAdams and Ladner, a jury may ultimately find in favor of Ladner. Because this is a credibility-based determination for the jury, the Court finds that summary judgment is not warranted. *See Brady v. Fort Bend Cty.*, 145 F.3d 691, 712 (5th Cir. 1998) (considering both "motivating factor" and "*Mt. Healthy* defense" under section analyzing "Jury's Finding on Causation").

### IV. ELMER TALMAGE FLURRY'S MOTION FOR ATTORNEY'S FEES

The Court now turns to Flurry's Motion for Attorney's Fees [46] filed on January 16, 2022. Flurry argues that he is entitled to attorney's fees pursuant to 42 U.S.C. § 1988. Upon review of the pleadings, record, and relevant law, the Court denies Flurry's Motion for Attorney's Fees.

42 U.S.C. § 1988 provides that "the court, in its discretion, may allow the prevailing party [in a § 1983 action] . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "The primary purpose of the attorney's fees provision in Section 1988 is to encourage private enforcement of the civil rights statutes," while at the same time "protect[ing] defendants from burdensome litigation having no legal or factual basis." *Doe v. Silsbee Independent School Dist.*, 440 F. App'x 421, 424-25 (5th Cir. 2011) (quoting *Vaughner v. Pulito*, 804 F.2d 873, 878 (5th Cir. 1986); *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001)). Section 1988 creates a presumption that attorney's fees will be granted to a prevailing civil rights plaintiff in all but special circumstances. *Doe*, 440 F. App'x at 425 (citing *Vaughner*, 804 F.2d at 878). By contrast, an award of attorney's fees to a prevailing defendant under Section 1988 is proper only upon a finding that the plaintiff's suit is "frivolous, unreasonable, or groundless, or without foundation, even though not brought in subjective bad faith," or "that the plaintiff continued to litigate after it clearly became so."

22

*Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978); *see also Hughes v. Rowe*, 449 U.S. 5, 14, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (adopting the *Christiansburg* standard for attorney's fees under § 1988).[6]

"When considering whether a suit is frivolous, a district court should look to factors such as whether the plaintiff established a *prima facie* case, whether the defendant offered to settle, and whether the court held a full trial." *Myers v. City of West Monroe*, 211 F.3d 289, 292 (5th Cir. 2000) (citing *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991)). Frivolity, however, is determined on a case-by-case basis by deciding "whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful." *Mississippi*, 921 F.2d at 609; *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 158 (3rd Cir. 2001) (citing *Sullivan v. School Bd.*, 773 F.2d 1182, 1189 (11th Cir. 1983)). The Supreme Court has cautioned that in making this evaluation, a district court must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22. Courts impose this stringent test on a prevailing defendant to "prevent any chilling effect on the enforcement of civil rights." *Myers*, 211 F.3d at 292 n. 1 (citation omitted).

The decision to award attorney's fees is committed to the discretion of the trial judge. 42 U.S.C. § 1988. In exercising this discretion, the Court finds the following factors weigh in favor of an award of attorney's fees: McAdams allegedly failed to establish a *prima facie* case on his claims against Flurry, Flurry never offered to settle, and the case never went to trial on McAdams' claims against Flurry. Because frivolity is determined on a case-by-case basis, however, the Court looks

---

[6] The frivolous standard is not in the text of Section 1988. But it is the standard added by the Supreme Court.

to the individual facts of the case before deciding whether attorney's fees are warranted. *See Barnes Foundation*, 242 F.3d at (citing *Sullivan*, 773 F.2d at 1189). In doing so, the Court finds several facts that weigh against awarding attorney's fees.

First, while supervisory officials are not liable under a theory of respondeat superior pursuant to 42 U.S.C. § 1983, McAdams asserts that he had reasonable belief that Flurry was involved in Ladner's decision to terminate him. Although his termination letter was typed on Ladner's letterhead as Tax Assessor of Harrison County, it was sent while Flurry was still the Tax Assessor of Harrison County. McAdams asserts that for this reason, and because Flurry and Ladner had a close working relationship, Flurry may have worked with, or directed, Ladner to terminate him. As discussed fully above, the Court denied Ladner's Motion for Summary Judgment—and if Flurry knew about Ladner's statement and if he directed Ladner to terminate McAdams, then summary judgment may have been denied as to Flurry too. While Flurry asserts that McAdams should have known that he did not have a viable claim against Flurry at the time he filed his Complaint, the Court disagrees. McAdams had no real way of knowing that Flurry did not have any knowledge of Ladner's statement until discovery took place. Therefore, the Court cannot find that McAdams' decision to move forward with his claims against Flurry was a frivolous one.

Second, it was not until Flurry's deposition that McAdams determined that Flurry was not involved in Ladner's decision to terminate him, and in fact, that Flurry had no knowledge of the termination letter. At the hearing on this matter, McAdams' conceded that had he not agreed to the dismissal of his claims against Flurry following Flurry's deposition, attorney's fees would be appropriate. But because McAdams agreed to a Stipulation of Dismissal [41] of all claims asserted against Flurry after his deposition, McAdams discontinued litigation after it became apparent that

his claims against Flurry were without merit. *See Christiansburg*, 434 U.S. at 421 (explaining attorney's fees should be awarded when the court finds that the claim was groundless at the outset or when the plaintiff continued to litigate after the claims clearly became groundless).

Accordingly, the Court finds that, despite Flurry's arguments to the contrary, he has failed to show why McAdams' claims against him were so lacking in merit that they could be considered frivolous unreasonable, or groundless at the outset of this action.

## V. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Ladner's Motion for Summary Judgment [43] is GRANTED IN PART as to McAdams' tortious interference claim and otherwise DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Flurry's Motion for Attorney's Fees [46] is DENIED.

This, the 23rd day of June, 2022.

_____
TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE